UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ARNOLD L. TYLER,

                        Plaintiff,

    -against-                                        5:12-CV-0199 (LEK)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.
_____

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

This is action for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff Arnold L. Tyler ("Plaintiff") benefits. Both parties have filed briefs. Dkt. Nos. 11 ("Plaintiff Brief"); 12 ("Defendant Brief"). For the reasons discussed below, the Commissioner's decision is affirmed.

**II.    BACKGROUND**

    **A. Factual History**

Plaintiff filed an application for disability benefits on February 19, 2010. Dkt. No. 9 ("Transcript") at 27.[1] For the fourteen years before his application—and up until his February 9, 2010, release—Plaintiff was incarcerated. Tr. at 206-81. While in prison, Plaintiff received intermittent medical treatment from various doctors. Id. Doctors at the facility monitored and managed Plaintiff's diabetes; however, there is little in the record regarding any possible physical limitations associated with diabetes. Id.

---

[1] The Transcript was docketed in eight parts and assigned additional page numbers by ECF. See Tr.; Docket. The pagination cited is the cumulative page number assigned by the SSA.

Upon his release, Plaintiff applied for supplemental security income ("SSI") benefits pursuant to Title XVI of the Social Security Act, citing limitations arising out of diabetes and mental health issues. Tr. at 27. The government ordered that Plaintiff be evaluated by consultative physicians Dr. Kalyani Ganesh, Dr. Jeanne A. Shapiro, and Dr. L. Meade. Tr. at 282-307.

On April 6, 2010, Dr. Ganesh found Plaintiff not to have any gross physical limitations in sitting, standing walking, or using his upper extremities. Tr. at 287-89.

Dr. Shapiro performed a psychological examination, finding that Plaintiff suffered from depressive disorder not otherwise specified, adjustment disorder, and that mild mental retardation would need to be ruled out. Tr. at 285. Dr. Shapiro found Plaintiff's manner of relating, social skills, and overall presentation adequate. Tr. at 284. His motor behavior was normal, his eye contact appropriate, and his speech fluent. Id. Plaintiff's thought processes were coherent and goal-directed with no evidence of delusions, hallucinations, or disordered thinking. Id. His insight and judgment were fair. Id. However, Dr. Shapiro observed that Plaintiff's mood was depressed and anxious and that his affect was constricted. Id. She estimated Plaintiff's intellectual functioning to be deficient. Id. As a result, Dr. Shapiro opined that Plaintiff might have difficulty understanding and following instructions, completing some tasks, interacting appropriately with others due to occasional social withdrawal, and maintaining a schedule due to occasional lethargy and lack of motivation. Tr. at 285. She recommended psychiatric treatment and noted that Plaintiff was in remission from cocaine abuse. Id.

Dr. Meade produced Psychiatric Review Technique ("PRT") and Mental Residual Functional Capacity ("RFC") reports in a non-examining role. Tr. at 290-307. Based on the available medical records, Dr. Meade adopted Dr. Shapiro's diagnoses in her PRT, Tr. at 290-98,

2

and opined that Plaintiff suffered from mild difficulty in daily activities and maintaining social functioning, and moderate difficulty maintaining concentration, persistence, or pace, with no repeated episodes of deterioration. Tr. at 300. Dr. Meade also found Plaintiff to be either "not significantly limited" or "moderately limited" in all mental, work-related categories enumerated in the Mental RFC.[2]

Based upon Dr. Shapiro's diagnoses, Plaintiff was referred to Brownell Center for mental health services. Tr. at 332-45. Licensed Master Social Worker ("LMSW") Anthony Hueber adjusted the diagnoses to major depressive disorder, post-traumatic stress disorder ("PTSD"), and cocaine dependence in sustained remission. Tr. at 314. LMSW Hueber stated that Plaintiff was very limited in organization and concentration, and that his mental symptoms would significantly limit concentration on work tasks and interaction with others. Tr. at 315. He noted that Plaintiff had made some progress: Plaintiff was able to start taking care of critical tasks such as finding stable housing, looking for employment, and maintaining abstinence from drugs despite feelings of depression. Tr. at 354. Plaintiff had also improved his social interactions, and was less reactive in stressful situations. Id.

On October 20, 2010, LMSW Hueber sent Plaintiff to St. Joseph's Hospital with complaints of severe depression and thoughts of suicide. Tr. at 372-94. A psychological examination found that Plaintiff had a normal mood and affect and an intact memory. Tr. at 377. Dr. Martin Waldron diagnosed suicial ideation linked to a relapse in cocaine use. Id. at 377, 456. After a stint in inpatient rehabilitation, Plaintiff began attending group therapy sessions and receiving further

---

[2] The Mental RFC allows a mental health care provider to rate a claimant "not significantly limited," "moderately limited," "markedly limited," "no evidence of limitation in this category," or "not ratable on available evidence" in several areas related to job function. See Tr. at 304-06.

3

treatment at the Brownell Center with LMSW Hueber and Nurse Practitioner ("NP") Susan Hauptfleisch. Tr. at 435-474. Plaintiff had continued to crack cocaine per a random urinalysis in January 2011. Tr. at 465-66. He was again incarcerated shortly after that urinalysis. Id.

### B. Procedural History

The SSA denied Plaintiff's application for benefits on April 14, 2010. Tr. at 73-76. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on June 1, 2010. Tr. at 77-79. The hearing was held on January 6, 2011, before ALJ F. Patrick Flanigan. Tr. at 40. On June 17, 2011, the ALJ issued an unfavorable decision, finding Plaintiff not disabled. Tr. at 24-38. Plaintiff filed a request for review with the Appeals Council. Tr. at 23. The Appeals Council denied the request for review, and the ALJ's decision became the final decision of the Commissioner on December 15, 2011. Tr. at 2-7. The present appeal ensued.

### C. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. Tr. at 29. Plaintiff presented with several severe impairments, including depressive disorder, adjustment disorder, PTSD, and substance abuse/dependence in questionable remission. Id. These impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, alone or in combination. Id. The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels; Plaintiff was capable of understanding, remembering, and carrying out simple routine tasks. Tr. at 31. Therefore, Plaintiff had not been disabled pursuant to the Social Security Act since the date of application. Tr. at 34.

## III. LEGAL STANDARD

### A. Standard for Benefits

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(a). Moreover, a plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

In determining whether a plaintiff has a disability, the Commissioner applies a five-step process. See 20 C.F.R. §§ 404.1520 and 416.920. Moreover, "[i]f at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The five-step process is as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the Secretary next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996) (citations omitted). The plaintiff bears the burden of proof with regard to the first four steps; the Commissioner bears the burden on the fifth step.

5

Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

### B. Standard of Review

In reviewing an SSA decision, a court's role is to determine whether the ALJ's findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); Featherly v. Astrue, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. of New York v. Nat'l Labor Relations Bd., 305 U.S. 197, 229 (1938). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Featherly, 793 F. Supp. 2d at 630.

The reviewing court should not affirm an ALJ's decision if it reasonably doubts that the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986. If the ALJ applied the correct legal standards, the decision must be upheld if the evidence is deemed to be susceptible to more than one rational interpretation, and must be sustained "even where substantial evidence may [also] support the plaintiff's position." See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). The reviewing court may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). It must afford the SSA's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

### IV. DISCUSSION

Plaintiff contends that the ALJ improperly gave greater weight to the medical opinion of the non-examining medical consultant, Dr. Meade, than the opinion of examining medical consultant Dr. Shapiro. Pl. Br. at 10. Plaintiff also asserts that the opinions of NP Hauptfleisch and LMSW Hueber should be afforded greater weight. Id. at 9. Finally, Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility as to subjective allegations. Id. at 16.

**A. Weight Granted to Record Care Providers**

*1. Dr. Shapiro*

The ALJ is required to give a treating physician's opinion as to the nature and severity of an impairment controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). However, in this case, there is no treating physician; all acceptable medical sources are consultative examiners. See 20 C.F.R. § 416.913(a). The opinions of additional care providers, such as NP Hauptfleisch and LMSW Hueber, may be considered as "other sources," but they need not be given controlling weight even if their findings are not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.913(d)(1), (3).

The ALJ gave significant weight to Dr. Shapiro's clinical observations but little weight to her conclusions, which were inconsistent with her observations. Tr. at 29-34. That finding is supported by substantial evidence. Dr. Shapiro noted that Plaintiff's: manner of relating, social skills, and overall presentation were adequate; motor behavior was normal; eye contact was appropriate; speech was fluent; thought processes were coherent and goal-directed with no evidence

7

of delusions, hallucinations, or disordered thinking; attention and concentration were intact; recent and remote memory skills were intact; and insight and judgment were fair. Tr. at 284-85. The ALJ reasonably found that these observations did not support the conclusions that Plaintiff's intellectual functioning may be deficient and that Plaintiff had difficulty understanding and following instruction and direction, completing some tasks, and interacting with others. Id. The ALJ also found that Dr. Shapiro did not find any definitive limitations regarding Plaintiff's work-related activity other than an inability to manage stress. Tr. at 31. Moreover, many of Dr. Shapiro's opinions were based on subjective allegations. Tr. at 285. Dr. Shapiro opined that Plaintiff might have difficulty in light of his complaints of memory and concentration deficits. Id. As explained *infra*, the ALJ is not required to credit a claimant's subjective allegations. The ALJ's decision to grant little weight to some of Dr. Shapiro's conclusions, therefore, comported with relevant law and was supported by substantial evidence.

*2. LMSW Hueber and NP Hauptfleisch*

LMSW Hueber and NP Hauptfleisch are not considered "medical sources" and therefore cannot be considered treating physicians; as a result the ALJ was not required to grant their opinions controlling weight. See 20 C.F.R. § 404.1527(a)(2). In any regard, their records were largely consistent with the ALJ's findings. LMSW Hueber noted that although Plaintiff was limited in organization and concentration, he was making progress; Plaintiff was able to take care of critical tasks, such as finding stable housing, beginning an employment search, and maintaining government benefits despite feelings of depression. Tr. at 354. Plaintiff was also improving his interpersonal interactions, and was less reactive in stressful situations. Tr. at 357. This progress only reversed when Plaintiff relapsed in his substance dependence. Id. NP Hauptfleisch noted that Plaintiff's

8

thoughts were organized and goal-directed, that there was no evidence of a thought or perceptual disorder, and that Plaintiff's insight and judgment were good. Tr. at 449. Therefore, while diagnoses of major depressive disorder and anxiety were likely correct, substantial evidence supported the ALJ's conclusion that these disorders did not significantly impact Plaintiff's RFC to perform work at all exertional levels. Tr. at 34.

### B. Credibility of Plaintiff's Allegations

Statements about the intensity and persistence of pain or symptoms will not alone establish that a plaintiff is disabled; they must be consistent with medical signs and/or laboratory findings to support those allegations. 20 C.F.R. § 404.1529(a).[3] The ALJ is not required to accept a plaintiff's subjective allegations as fact. Rockwood v. Astrue, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009). However, when rejecting a plaintiff's subjective allegations for lack of credibility, the ALJ "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is based on substantial evidence.'" Martone v. Apfel, 70 F. Supp. 2d 145, 152 (N.D.N.Y. 1999) (quoting Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).

The ALJ concluded that the objective medical evidence supported Plaintiff's allegation of a mental impairment, but did not support Plaintiff's statements concerning the intensity, persistence,

---

[3] In addition to objective medical evidence, a plaintiff's allegations with respect to persistence and intensity of symptoms should also be considered in light of: plaintiff's daily activities; the location, duration, frequency, and intensity of plaintiff's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication plaintiff takes or has taken to alleviate plaintiff's pain or other symptoms; treatment, other than medication, plaintiff receives or has received for relief of pain or other symptoms; any measure plaintiff uses or has used to relieve plaintiff's pain or other symptoms; and other factors concerning plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

and limiting effects of that impairment. Tr. at 32-33. The medical evidence offered by Plaintiff fails to suggest that his impairment is more significant than the ALJ's findings. Plaintiff's allegations conflict with the findings of LMSW Hueber and NP Hauptfleisch, who both noted significant improvement in Plaintiff's functioning absent substance dependence. See, e.g., Tr. at 357. Additionally, most of Plaintiff's allegations were vague, without reference to how these symptomatic allegations affect his ability to perform job-related tasks. Pl. Br. at 16-17. Finally, to the extent Plaintiff alleges debilitating auditory hallucinations, those allegations are absent from the medical record—even after Plaintiff's relapse into substance use—and NP Hauptfleisch's conclusion that there was no evidence of a thought or perception disorder directly contradicts Plaintiff's testimony. Tr. at 449, 453.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Social Security Administration's decision denying Plaintiff benefits is **AFFIRMED**, and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: August 01, 2014
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge